UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JACOB FRANCIS LOTTMAN,<br><br>                    Movant,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 4:21-CV-04025-KES<br>4:21-CV-04026-KES[1]<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motions by Jacob Lottman, a federal prisoner, to vacate, set aside or correct his sentences.  See Docket No. 1.  The United States of America ("government") has filed a motion to dismiss Mr. Lottman's motions without holding an evidentiary hearing.  See Docket No. 23.[2]  Mr. Lottman has not responded to that motion.

---

[1] Mr. Lottman filed two separate motions pursuant to 28 U.S.C. § 2255—one collaterally attacking his sentence in United States v. Lottman, 4:19-CR-40005-KES (D.S.D.) (obstruction of justice case) and one attacking his sentence in United States v. Lottman, 4:18-CR-40093-KES (D.S.D.) (drug case).  Both § 2255 motions assert the same singular claim for relief.  Accordingly, both are addressed together in this one opinion.  The cases were consolidated on February 17, 2021.  See Lottman v. United States, 4:21-CV-04026-KES at Docket No. 8 (D.S.D.), with all filing to occur in 4:21-CV-04025-KES.

[2] References to "Docket No." are references to the civil habeas case 4:21-cv-04025 unless otherwise noted.  Mr. Lottman has two underlying criminal cases.  See Footnote 1, *supra*.  Citation to documents in those underlying cases will be by docket number preceded by "2018CR" or "2019CR."

## FACTS

### A.    2018 Criminal Case

Mr. Lottman was indicted in this district on July 10, 2018; a superseding indictment was filed September 5, 2018; and a second superseding indictment was filed February 5, 2019.  See United States v. Lottman, 4:18-CR-40093 at Docket Nos. 1, 18 & 30 (D.S.D.) (hereinafter "2018CR").  Ultimately, Mr. Lottman was charged with distribution of fentanyl to four separate victims resulting in serious bodily injury to Victims 1, 2 & 4 (corresponding to counts 1, 2 & 4 of the second superseding indictment), and resulting in the death of Victim 3 (count 3).  See 2018CR Docket No. 30.

Thomas Weerheim was appointed to represent Mr. Lottman upon his initial appearance; however, Mr. Lottman requested new counsel, and the court appointed attorney John Hinrichs to represent him on July 30, 2019.  See 2018CR Docket Nos. 10 & 52.  On August 22, 2019, a written plea agreement between Mr. Lottman and the government was filed.  2018CR Docket Nos. 61-63.

### B.    2019 Criminal Case

On January 8, 2019, Mr. Lottman was indicted in a second separate case charging him with obstructing justice by retaliating against a witness, victim or informant, or aiding and abetting the same.  United States v. Lottman, 4:19-CR-40005-KES at Docket No. 1 (D.S.D.) (hereinafter "2019CR").  Although a superseding indictment was filed April 2, 2019 (2019CR Docket No. 13), and a second superseding indictment was filed May 8, 2019 (2019CR Docket No. 24),

the superseding indictments just added additional defendants—they did not change the charge against Mr. Lottman.  Mr. Lottman, along with four other co-defendants, was charged with assaulting an informing witness on July 20, 2018, while all five men were being detained at the Yankton County Jail.  See 2019CR Docket No. 24.

For the 2019 indictment, Attorney Thomas Weerheim was appointed to represent Mr. Lottman upon his initial appearance.  2019CR Docket No. 9.  However, Attorney John Hinrichs was substituted as counsel for Mr. Lottman on July 30, 2019.  2019CR Docket No. 65.

Mr. Hinrichs filed a motion to suppress evidence in the obstruction case on August 6, 2019.  2019CR Docket No. 68.  Counsel sought to suppress any disciplinary forms, inmate waivers, inmate admission forms, or in-custody statements alleged to have been made by Mr. Lottman to any police or jailers at the Yankton County Jail.  Id.  The government filed a response to the motion indicating it did not oppose the motion.  2019CR Docket No. 75.  The court accordingly granted the motion to suppress.  2019CR Docket No. 76.

On August 22, 2019, a written plea agreement between Mr. Lottman and the government was filed.  2019CR Docket Nos. 79-81.  The plea agreement combined both of Mr. Lottman's pending criminal cases into a single plea agreement, statement of facts, and plea agreement supplement.  Id.

## C.    Written Plea Agreement Documents

The plea agreement recited that Mr. Lottman would plead guilty to count 1 in the 2018 drug case, which carried a mandatory minimum sentence

3

of 20 years in prison and a maximum sentence of life imprisonment. 2019CR Docket No. 79 at p. 2, ¶ C. Mr. Lottman also agreed to plead guilty to the sole count in the 2019 obstruction case, which carried a maximum sentence of 20 years' imprisonment. Id. In return, the government agreed to dismiss counts 2-4 of the 2018 indictment. Id. at p. 3.

A separate subsection of the plea agreement notified Mr. Lottman that the government intended to file a motion for a four-level upward departure under the United States Sentencing Guidelines ("USSG") §§ 5K2.21 and 3D1.4. Id. at p. 4, ¶ E. The government intended to pursue the motion because it believed Mr. Lottman's plea of guilty to count 1 in the drug case did not reflect the actual seriousness of the offenses. Id. Mr. Lottman acknowledged that if he had been convicted of counts 2-4 of the second superseding drug indictment (2018CR Docket No. 30), USSG §§ 3D1.4 & 5K2.21 would apply and would result in a four-level upward departure. Id. The plea agreement stated the government intended to argue for this upward departure at sentencing, but Mr. Lottman was free to argue for a downward variance from the increased USSG range. Id. If Mr. Lottman argued for a downward variance, the government stated it would oppose such motion. Id.

Under the terms of the plea agreement, Mr. Lottman agreed to waive his right to appeal all issues in his cases except jurisdictional issues and upward departure or upward variance at sentencing. Id. at p. 7, ¶ N.

A written statement of facts in support of Mr. Lottman's pleas of guilty was also filed. 2019CR Docket No. 80. As to the plea to count one of the drug

4

indictment, Mr. Lottman admitted he was a long-time opioid user who also sold opioids to others.  Id. at p. 1.  Mr. Lottman admitted to selling fentanyl to Victim #1, whom he admitted knowing and that the fentanyl sold to Victim #1 caused that person to overdose and stop breathing.  Id.  Mr. Lottman stated that, but for Victim #1's ingestion of the fentanyl sold to him by Mr. Lottman, Victim #1 would not have overdosed.  Id. at pp. 1-2.

As to the 2019 obstruction charge, Mr. Lottman stated he was in jail awaiting trial on July 20, 2018, along with Witness #1, who was an informer.  Id. at p. 2.  Mr. Lottman and others assaulted Witness #1, resulting in fractures, abrasions, bruising, and other injuries.  Id.  Mr. Lottman admitted the motive for assaulting Witness #1 was that the witness had given information to the police about a federal crime.  Id.

The statement of facts contained a disclaimer that it was not intended to be a complete description of Mr. Lottman's criminal acts, but only to satisfy Federal Rule of Criminal Procedure 11(b)(3).  Id.  The statement indicated both parties understood that additional information might be presented at sentencing and attributed to Mr. Lottman.  Id.

Finally, a plea agreement supplement was also filed under seal.  2019CR Docket No. 81.

**D.    Change of Plea Hearing**

Mr. Lottman's change of plea hearing was held on August 22, 2019.  See 2019CR Docket No. 222.  Mr. Lottman was placed under oath at the outset of

5

the hearing, so all his answers and testimony recited below were given under penalty of perjury. Id. at p. 3.

Mr. Lottman told the court he had not been treated recently for any mental illness or addiction to drugs. Id. at p. 4. He stated under oath he was not under the influence of any drug, medication, or alcohol. Id. Mr. Lottman told the court he was fully satisfied with his counsel's representation and advice to him. Id.

Mr. Lottman told the court that he had read and discussed his plea agreement and plea agreement supplement with his lawyer before he signed them. Id. at pp. 4-5. He testified those written documents contained all the promises that had been made to him. Id. at p. 5. He denied that anyone had threatened him in any way or tried to force him to persuade him to accept the agreements. Id. at pp. 5-6.

The court informed Mr. Lottman that the sentencing recommendations made in the agreements were simply recommendations to the court and that the court could reject those recommendations and sentence Mr. Lottman more severely than he anticipated. Id. at p. 5. Mr. Lottman said he understood. Id. Mr. Lottman testified he was pleading guilty of his own free will because he was guilty. Id. at p. 6.

The court told Mr. Lottman if he pleaded guilty to the drug distribution charge in his 2018 case there would be a mandatory minimum sentence of 20 years and a maximum possible sentence of life imprisonment. Id. at p. 7. The court told Mr. Lottman if he pleaded guilty to the obstruction charge, the

6

maximum sentence that could be imposed was 20 years' imprisonment.  Id.
Mr. Lottman stated, under oath, he understood these penalties.  Id. at p. 8.

The court then addressed the USSG.  Id. at p. 8.  The court told
Mr. Lottman that, if he entered a guilty plea, a presentence investigation report
("PSR") would be written that would help determine his USSG range.  Id.  Then
the court would have to rule on any objections made to the PSR.  Id.  In
addition, the court would consider whether there were any reasons why
Mr. Lottman's sentence should be higher or lower than the advisory USSG
range.  Id. at p. 9.  Because of that, the court explained Mr. Lottman's USSG
range at sentencing might be different than the estimate his counsel shared
with him.  Id. at p. 8.  Mr. Lottman stated he understood this.  Id. at pp. 8-9.

The court explained that, under the terms of the plea agreement he had
signed, Mr. Lottman was giving up his right to appeal all issues except
jurisdictional issues or an upward departure.  Id. at p. 9.  Mr. Lottman said he
understood this.  Id.

The court told Mr. Lottman he had a right to plead not guilty on all his
charges in both his cases and proceed to a jury trial.  Id. at p. 10.  At the trial,
the court would tell the jury he was presumed to be innocent and the
government would have to prove his guilt beyond a reasonable doubt.  Id.  He
would have the right to the assistance of his lawyer at trial and other stages of
the proceedings.  Id.  Mr. Lottman would have the right to see and hear all of
the witnesses and have them cross-examined as part of his defense.  Id.

The court explained that Mr. Lottman would have the right not to testify at trial unless he voluntarily gave up that right.  <u>Id.</u>  The court told Mr. Lottman he would be able to serve subpoenas on witnesses he wanted to have testify on his behalf at trial.  <u>Id.</u>  If Mr. Lottman decided not to testify or put on any evidence, the court would tell the jury those facts could not be used against him.  <u>Id.</u>  The court would tell the jury the burden of proving Mr. Lottman's guilt beyond a reasonable doubt would remain on the government.  <u>Id.</u>  The court told Mr. Lottman if he pleaded guilty, there would not be a trial and he would have given up all the other rights the court just told him about.  <u>Id.</u> at pp. 10-11.  Mr. Lottman said he understood all this.  <u>Id.</u> at p. 11.

The court then informed Mr. Lottman of the essential elements of the charges which the government would have to prove at a trial.  <u>Id.</u> at pp. 11-12. The court then asked Mr. Lottman if he had read the written factual basis statement.  <u>Id.</u> at p. 12.  Mr. Lottman replied that he had.  <u>Id.</u>  Mr. Lottman affirmed that everything stated in the factual basis statement was truthful.  <u>Id.</u> The court stated it had reviewed the factual basis statement and found it established an independent factual basis for both pleas.  <u>Id.</u>

Mr. Lottman then entered guilty pleas to count one of the 2018 drug indictment and to the 2019 obstruction indictment.  <u>Id.</u> at pp. 13-14.  The court then made the following finding:

> It is the finding of the court in the case of United States v. Jacob Francis Lottman that the defendant is fully competent and capable of entering an informed plea.  That he is aware of the nature of the charges and the consequences of the pleas.  And that

8

the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of both offenses.  Both pleas of guilty are therefore accepted and the defendant is now adjudged guilty of both offenses.

Id. at p. 14.

**E.    The PSR and Both Parties' Sentencing Motions**

The PSR calculated Mr. Lottman's USSG range as follows:

Obstruction of Justice Charge:

|  |  |
|---|---|
| Base Offense Level | 14 |
| Causing Physical Injury | +8 |
| Adjusted Offense Level | 22 |

Distribution of a Controlled Substance Charge:

|  |  |
|---|---|
| Base Offense Level | 38 |
| No Adjustments | |
| Adjusted Offense Level | 38 |
| Combined Adjusted Offense Level | 38 |
| Acceptance of Responsibility | - 3 |
| Total Offense Level | 35 |

See 2019CR Docket No. 198 at p. 8-10, ¶¶ 27-47.

The PSR calculated Mr. Lottman as having 7 criminal history points, placing him in criminal history category IV.  Id. at p. 14, ¶¶ 62-63.  With a total offense level of 35 and a criminal history category of IV, the PSR calculated Mr. Lottman's advisory USSG range to be 235 to 293 months' imprisonment. Id. at p. 21, ¶ 111.  However, the mandatory minimum statutory sentence for

Mr. Lottman's 2018 drug offense was 20 years (240 months), so the effective guideline range was 240 to 293 months.  Id.

The PSR acknowledged that the government would seek an upward departure on the basis that the dismissed charges from Mr. Lottman's 2018 drug case showed his conduct was more serious than what was reflected in the USSG calculation.  Id. at pp. 21-22, ¶ 113.  The PSR recognized that as a potential valid ground for departure.  Id. at p. 23, ¶ 127.

Counsel also filed a motion for a downward variance, asking that if the court granted the government's motion for upward departure, that the court vary downward.  2019CR Docket No. 210.  Counsel set forth Mr. Lottman's extremely unfortunate childhood being raised in a family of heavy drug users, his early (age 14) addiction to opiates, and his struggles to attend treatment and maintain sobriety.  Id. at pp. 1-4.  Counsel then argued that, should the court grant the government's motion for upward departure, Mr. Lottman's resulting sentence would be greater than necessary to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).  Id. at p. 4.  Counsel urged the court to consider Mr. Lottman's personal history as discussed above and grant a downward variance.  Id.

As virtually promised in the plea agreement, the government *did* file a motion for upward departure pursuant to USSG § 5K2.21.  2018CR Docket No. 76.  The government asked for a four-level increase to Mr. Lottman's total offense level based on dismissed counts 2-4 of the 2018 drug indictment.  Id. Section 5K2.21 provides a court may depart upward to reflect the actual

10

seriousness of the offense based on conduct that was in a dismissed charge so long as the facts from that dismissed charge did not enter into the determination of the applicable USSG range.  USSG § 5K2.21.

**F.      Sentencing Hearing**

Mr. Lottman was sentenced in both his 2018 and his 2019 cases on January 28, 2020.  2019CR Docket No. 224.  Mr. Lottman personally addressed the court and stated that he was not objecting to the government's motion for upward departure.  Id. at p. 11, lines 10-11.  Mr. Lottman personally took responsibility for the damage he had done to the victims in all of his charges, both those that he pleaded guilty to and those victims in dismissed charges.  Id. at pp. 7-11.

The court granted the government's motion for a four-level increase in Mr. Lottman's USSG total offense level because the USSG range did not adequately reflect the seriousness of Mr. Lottman's drug offense given the three people who overdosed and the one person who died.  Id. at pp. 19-20.  That brought Mr. Lottman's total offense level to 39.  Id. at p. 20.  With an offense level of 39 and a criminal history category of IV, Mr. Lottman's revised USSG range was 360 months' imprisonment up to life imprisonment.  Id.

Based on Mr. Lottman's circumstances growing up and his potential, the court varied downward to a 300-month term of imprisonment on the 2018 drug charge.  Id. at p. 23.  As to the obstruction charge, the court noted that Mr. Lottman had committed crimes while incarcerated:  two of the four drug charges involved Mr. Lottman distributing fentanyl while in jail, and he was

responsible for two assaults while in jail.  Id. at pp. 22-23.  Because of that

conduct while being detained, the court sentenced Mr. Lottman to 60 months'

imprisonment on the obstruction charge, said sentence to run consecutive to

the drug sentence for a total sentence of 360 months.  Id. at pp. 23, 26.

The court stated that, because it granted the government's motion for an

upward departure, Mr. Lottman had the right to appeal.  Id. at p. 26.  The

court told Mr. Lottman that if he wanted to appeal, he needed to file a notice of

appeal within 14 days with the clerk of court's office.  Id.  Mr. Lottman stated

he understood this.  Id.

**G.    Mr. Lottman's § 2255 Claim**

Mr. Lottman asserts one claim for relief, which is reproduced from his

§ 2255 motion verbatim:

> My attorney knew, or should have known, to object to the 4-
> level upward departure that was presented by the government
> under USSG §§ 5K2.21 and 3D1.4.  The upward departure was
> based on the dismissed counts in the indictment.  Around my
> sentencing date my attorney convinced me to not object to the
> enhancement, and instead suggested that I allow the court to
> determine whether the enhancement should apply.  If we would
> have objected to the enhancement the government would have had
> to present evidence, and prove beyond a preponderance of the
> evidence that the enhancement should apply, and we would have
> had a chance to defend against it, possibly resulting in my base
> offense level being 35 rather than 39, significantly reducing my
> 300 months.

> Relief requested.  I request for the 4-level enhancement to be
> re-examined and overturned and to be resentenced at an offense
> level of 35.

See Docket No. 1 at p. 5 (Ground I).

Although Mr. Lottman purportedly reserved to himself the right to assert additional claims at a later date, he never has pleaded any other claims.  Id. at pp. 5-6 (Grounds II-IV).  Therefore, the above claim is the only one before the court.

The government now moves to dismiss both of Mr. Lottman's § 2255 motions without holding an evidentiary hearing.  See Docket No. 23.  As indicated above, Mr. Lottman did not file anything in opposition to the government's motion.

The court notes that the sentencing court departed upward in sentencing Mr. Lottman only on his drug case, 4:18-CR-40093, which is the basis of his civil § 2255 case 4:21-CV-04026; the court did not depart upward in his obstruction case, 4:19-CR-40005, which is the basis for his civil § 2255 case 4:21-CV-04025.  The claim asserted by Mr. Lottman as stated above has application only to his sentence in the 2018 drug case.  Therefore, Mr. Lottman's § 2255 motion on his obstruction sentence, Lottman, 4:21-CV-04025-KES, should be dismissed outright as his claim for relief has no application to the conviction or sentence in his obstruction case on which 4:21-CV-04025 is based.

## DISCUSSION

### A.   Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal

prisoners a remedy identical in scope to federal habeas corpus." Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location. United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

14

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982); <u>McNeal v. United States</u>, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. <u>Bousley v. United States</u>, 523 U.S. 614, 621-22 (1998); <u>McNeal</u>, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. <u>Moore-El v. Luebbers</u>, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. <u>See</u> <u>United States v. Campbell</u>, 764 F.3d 880, 892-93 (8th Cir. 2014); <u>United States v. Lee</u>, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Ineffective Assistance Claim**

**1.    Standard for Ineffective Assistance of Counsel Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from

16

a breakdown in the adversary process that renders the result
unreliable.

Id.

"There is a presumption that any challenged action was sound trial
strategy and that counsel rendered adequate assistance and made all
significant decisions in the exercise of professional judgment." Hall v.
Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted). It is the
petitioner's burden to overcome this presumption, and a "petitioner cannot
build a showing of prejudice on a series of errors, none of which would by itself
meet the prejudice test." Id. Counsel's conduct must be judged by the
standards for legal representation which existed at the time of the
representation, not by standards promulgated after the representation. Bobby
v. Van Hook, 558 U.S. 4, 7-9 (2009). American Bar Association standards and
similar directives to lawyers are only guides as to what reasonableness of
counsel's conduct is; they are not its definitive definition. Id.

The Supreme Court distinguishes between those cases in which the new
evidence "would barely have altered the sentencing profile presented to the
sentencing judge," and those that would have had a reasonable probability of
changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quotation
omitted). In assessing the prejudice prong, it is important for courts to
consider "the totality of the available mitigation evidence—both that adduced at
trial, and the evidence adduced in the habeas proceeding—and reweigh it
against the evidence in aggravation." Id. at 40-41 (internal quotation omitted,
cleaned up). It is not necessary for the petitioner to show "that counsel's

deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quotation omitted). Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

### 2. Application of the Standard to Mr. Lottman's Claim

Counsel for Mr. Lottman in his underlying criminal cases at the time of sentencing has filed an affidavit, which Mr. Lottman has not controverted. See Lottman v. United States, 4:21-CV-04026-KES at Docket No. 9. In his affidavit, counsel states he went over paragraph E of the plea agreement (the provision about the government's intent to move for an upward departure) with Mr. Lottman before the agreement was signed. Id. at p. 2, ¶ 4.

Counsel stated he discussed the merits of disputing the allegations in the dismissed counts of the drug indictment (counts 2-4), and initially advised Mr. Lottman to object to the government's motion at sentencing. Id. at ¶ 5. With Mr. Lottman's permission, counsel also tried to negotiate a stipulation with the government for an upward departure of less than four levels. Id. at ¶ 6. The government refused counsel's overture. Id.

While attempting to negotiate the stipulation with the government, the government provided counsel with additional discovery regarding the dismissed counts, including an expert report and a synopsis of an interview of one of the alleged victims. Id. at ¶ 7. Counsel then discussed this additional discovery

with Mr. Lottman, concluding and advising Mr. Lottman that opposition to the government's motion for upward departure was unlikely to succeed.  Id. at ¶ 8. Counsel opined Mr. Lottman lacked an adequate evidentiary basis to successfully challenge the government's motion for upward departure.  Id. at p. 3, ¶ 12.

Instead of challenging the upward departure, counsel advised it would be more strategic for Mr. Lottman to allow the upward departure, but then move for a downward variance from the resulting USSG range.  Id. at ¶ 11.  Counsel indicated there were "other features of his case" that ultimately influenced the decision not to object to the government's upward departure motion.  Id. at ¶ 10.  Counsel stated that Mr. Lottman agreed at the time of sentencing with his advice not to object to the government's motion for upward departure and to instead seek a downward variance.  Id. at ¶ 11.  Counsel stated the motion for downward variance was successful as Mr. Lottman ended up getting sentenced lower than his USSG range.  Id.  Because Mr. Lottman neither responded to the government's motion to dismiss nor responded to counsel's affidavit, these allegations are accepted as true by the court.

The court notes that, in addition to being uncontested, counsel's affidavit is supported by the record.  Mr. Lottman personally stated at the sentencing hearing that he was not contesting the government's motion for upward departure.  See 2019CR Docket No. 224 at p. 11, lines 10-11.  He personally stated he was taking responsibility for harming the victims named in all the charges, both those he pleaded guilty to and those in the dismissed charges.

19

Id. at pp. 7-11.  These dismissed charges that Mr. Lottman took responsibility for were the basis for the government's motion to depart upward.

The court told Mr. Lottman at the change of plea hearing he could appeal if the court imposed an upward departure.  2019CR Docket No. 222 at p. 9. Then, at the end of the sentencing hearing, the court told Mr. Lottman it *did* depart upward and so he *did* have the right to appeal.  See Docket No. 224 at p. 26.  The court then told Mr. Lottman how to appeal:  by filing a notice of appeal within 14 days with the clerk of court's office.  Id.  Mr. Lottman stated he understood all of this.  Id.  The fact that Mr. Lottman did not appeal the court's upward departure even though he had a right to do so is further evidence he did, in fact, agree with counsel's strategy at the time of sentencing.

In addition, Mr. Lottman received a below-USSG sentence on his drug charge as a result of the strategy employed by counsel.  Id. at pp. 22-23, 26 (varying downward from a minimum USSG range of 360 months to a lower sentence of 300 months).  Thus, counsel's affidavit that the strategy achieved its goal is also supported by the record.

Counsel's representation is presumed to be sound trial strategy and presumed to be effective.  Strickland, 466 U.S. at 690; Hall, 296 F.3d at 692. Here, not only is the presumption dispositive, but counsel has also explicitly explained his advice not to challenge the upward departure was strategic.  See Lottman, 4:21-CV-04026 at Docket No. 9.  Counsel's decisions involving strategy "are 'virtually unchallengeable.' "  Loefer v. United States, 604 F.3d

1028, 1030 (8th Cir. 2010) (quoting Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006)).

Furthermore, counsel's strategy paid off in that Mr. Lottman received a downward variance. The court concludes Mr. Lottman has failed to carry the burden of demonstrating that counsel rendered deficient representation. As such, the court need not address the prejudice prong of the Strickland analysis. Strickland, 466 U.S. at 697 (a court may address the two factors in any order and a dispositive finding that counsel has not been deficient relieves the court of the necessity of addressing prejudice and vice versa). The court concludes the government's motion to dismiss should be granted.

## C.    No Hearing is Warranted

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting

United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).  The Eighth
Circuit held no evidentiary hearing was necessary because Guzman-Ortiz
mischaracterized the record in his challenges to his lawyer's representation
during closing argument and sentencing.  Id.  Therefore, "no further factual
development of his claims was necessary" before denying those claims.  Id.

The district court's denial of an evidentiary hearing in Adams v. United
States, 869 F.3d 633 (8th Cir. 2017), was affirmed.  Adams claimed he did not
understand the plea documents or the plea proceeding, his lawyer never
explained them to him, he only signed the documents because his lawyer told
him to, said his lawyer blindly urged him to plead guilty and to answer all the
judge's questions at the plea hearing by saying "yes."  Id. at 635  Adams'
lawyers submitted affidavits that backed up the record, but were not consistent
with Adams' affidavit submitted in his § 2255 motion.  Id. at 634  The district
judge denied the § 2255 motion without a hearing.  Id.  The Eighth Circuit said
Adams' contention that his lawyer said to answer all the judge's questions "yes"
was belied by the transcript of the plea hearing where he answered multiple
questions "no."  Id. at 635.  Since he chose between "yes" and "no" answers
when answering the court's questions, the court was permitted to hold Adams
to his sworn testimony at the plea hearing that he had read the plea
documents, that they were accurate, that he had discussed them with counsel,
and that he understood them.  Id.

Here, it is Mr. Lottman's burden to show the two prongs of the Strickland
test are met.  By not responding to the government's motion and counsel's

affidavit, he has failed to carry that burden.  Furthermore, the settled record in Mr. Lottman's criminal cases support counsel's affidavit.  Accordingly, on the basis of the record before the court, Mr. Lottman has not shown a factual dispute for which an evidentiary hearing would be necessitated.  The court recommends denial of his claim without holding a hearing.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 23] and dismissing both of Mr. Lottman's petitions with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED August 13, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

24